UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL R. MURRAY

CIVIL ACTION

VERSUS

NUMBER 08-254-RET-SCR

STATE OF LOUISIANA, THROUGH
DIVISION OF ADMINISTRATION,
OFFICE OF PLANNING AND BUDGET,
ET AL

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, February 2, 2011.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


MICHAEL R. MURRAY

VERSUS

STATE OF LOUISIANA, THROUGH
DIVISION OF ADMINISTRATION,
OFFICE OF PLANNING AND BUDGET,
ET AL

CIVIL ACTION

NUMBER 08-254-RET-SCR


**MAGISTRATE JUDGE'S REPORT**

Before the court is the Motion for Summary Judgment filed by defendants the State of Louisiana, through Division of Administration, Office of Planning and Budget, and Ray Stockstill. Record document number 20. The motion is opposed.[1]

Defendants moved for summary judgment as to all federal and state law claims alleged by the plaintiff, and their motion has merit. Based on the applicable law and the following analysis of the summary judgment evidence, there is no genuine dispute for trial on any of the plaintiff's claims.


**Background**

Plaintiff Michael R. Murray's employment with the State of Louisiana, Office of Planning and Budget (OPB) began in 1979. At the time of the events giving rise to this suit the plaintiff was classified as a State Budget Management Analyst 3. In 2007 the

---

[1] Record document number 23.

plaintiff was assigned to the SWAT group and no longer assigned to work with state agencies. On October 20, 2008, approximately six months after the plaintiff filed this suit, he was promoted to Budget Analyst 4. Plaintiff's co-worker and later his supervisor, Ann Bland, was employed in OPB from January 1981 until her retirement in 2007. Bland was also a Budget Analyst 3 until her promotion to State Budget Manager in November 2004. During her tenure as State Budget Manager she directly supervised the plaintiff. Plaintiff's next level supervisor was defendant Stockstill, who was the State Director of Planning and Budget from April 25, 2000 to July 17, 2000, and the State Director of Management and Budget from July 18, 2005 to January 31, 2007. In February 2007 Stockstill became the Director of Budget Policy, Priority, Preparation and Implementation.[2]

In the summer of 2000 Bland made complaints regarding the OPB which resulted in an official investigation.[3] Bland complained that there was an unprofessional atmosphere in the office because of excessive profanity, and she complained about gender discrimination with regard to promotions. Bland also asserted that given her seniority and performance she, rather than the male employee who was detailed to the position, should have been

---

[2] Record document number 20-31, exhibit D, Stockstill affidavit, ¶ 1.

[3] Record document number 20-8, exhibit A-4, pp. 1-7.

promoted to State Budget Manager for the health group.  On July 12, 2000 the plaintiff was interviewed in connection with Bland's grievance and  spoke in support of her complaints.  Bland later appealed to State Civil Service alleging that she was denied a State Budget Manager position because of her gender and because she filed the internal grievance.[4]  A Civil Service hearing was held in the summer of 2001, and the plaintiff testified favorably regarding Bland's work performance.  Although Bland's appeal was denied, she was promoted to a State Budget Manager position in 2004.[5]

On August 30, 2006 the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).[6]  Under the heading "DISCRIMINATION BASED ON," the only box checked by the plaintiff was "RETALIATION."  Plaintiff stated  that beginning in the year 2000, after he testified and supported Bland in her grievance and civil service appeal, he began to notice instances of retaliation.  Plaintiff asserted that after his participation in Bland's complaint, he was subject to retaliation in the form of consistently low/poor ratings on his annual

---

[4] Record document number 20-14, exhibit B, Christina Cardona affidavit (Cardona is the H.R. Supervisor for the State of Louisiana, Division of Administration, Employee Relations); record document number 20-30, exhibit C, Bland affidavit.

[5] Record document number 20-33, Statement of Undisputed Material Facts, numbers 3 and 12.

[6] Record document number 20-7, exhibit A-1, EEOC charge number 461-2006-00997 dated August 30, 2006.

Performance Planning and Review (PPR). As a result, the plaintiff alleged that he had been denied merit raises, consideration for promotions, bonuses and opportunities to obtain other employment. Plaintiff also alleged that Bland had subjected him to retaliatory harassment in the form of an unreasonable work load and accusations of insubordination. Plaintiff concluded his charge by asserting:

> I believe I am being discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe I am being discriminated against in retaliation for my participation in the harassment investigation conducted in 2000.

After receiving his Notice of Right to sue from the EEOC[7] the plaintiff filed this action on April 29, 2008, naming as defendants his employer and Stockstill. Plaintiff's complaint alleged numerous claims against the defendants: (1) discrimination on the basis of sex, race, color and national origin in violation of Title VII, Louisiana Employment Discrimination Law (LEDL) and 42 U.S.C. § 1981; (2) retaliation under Title VII, § 1981 and the First Amendment; (3) violations of federal and state whistleblower laws; and, (4) state law tort claims - negligence and intentional infliction of emotional distress by Stockstill, and negligent supervision and training by the State of Louisiana.

Defendants moved for summary judgment on various grounds as to all claims alleged by the plaintiff. Defendants moved for summary judgment based on the threshold issues of exhaustion, the statutory

---

[7] *Id.*, exhibit A-2.

definition of employer and prescription. Defendants argued that the plaintiff's Title VII discrimination claims based on sex, race, national origin and color should be dismissed because they are not within the scope of the plaintiff's EEOC charge. Defendants argued further that Stockstill cannot be held liable under Title VII because he does not satisfy the statute's definition of an employer.

Defendants' prescription arguments covered several federal and state law claims alleged by the plaintiff. Defendants argued that: (1) any Title VII retaliation claim arising from events that occurred more than 300 days before the plaintiff filed his EEOC charge is prescribed; (2) any claim alleged under § 1981 is prescribed under either a one year or four year prescriptive period; (3) any claim alleged under the LEDL arising out of events that occurred more than 18 months before the complaint was filed is prescribed; and, (4) any state law claim for intentional infliction of emotional distress or violation of the state's whistleblower laws that occurred more than one year before the plaintiff filed his complaint is prescribed.

On the merits of the plaintiff's Title VII retaliation claim, the defendants argued that there is no evidence of a causal connection between the plaintiff's protected activity and any adverse employment actions, nor any evidence to refute the plaintiff's low PPR ratings, denial of merit pay increases and

denial of promotions. Defendant also argued that the plaintiff cannot maintain a § 1981 retaliation claim because the plaintiff did not participate in a claim or complaint of race discrimination. Finally, with regard to the plaintiff's state law whistleblower and tort law claims, the defendants argued that: (1) the plaintiff cannot prove an actual unlawful employment practice, which is an essential element of a state whistleblower claim; (2) there is no evidence to support the plaintiff's claim of intentional infliction of emotional distress; and, (3) the plaintiff's state law claims based on negligence/negligent supervision and training are barred by Louisiana's Workers' Compensation law.

Plaintiff opposed the defendants' motion for summary judgment, but only as to some of the claims addressed in their motion. Plaintiff contended that summary judgment should not be granted as to his Title VII retaliation claim because he has evidence to support this claim. Plaintiff also argued that the evidence shows the defendants' conduct constituted both unlawful retaliation under the state whistleblower law and intentional infliction of emotional distress. According to the plaintiff, neither his Title VII claim nor his claim for intentional infliction of emotional distress is prescribed because there was a continuous violation of Title VII due to continuing acts of retaliation, which began in 2000 after he supported and participated in Bland's discrimination complaint.

In opposition to the defendants' motion the plaintiff provided

affidavits from other budget analysts/OPB employees who worked in OPB and/or with the plaintiff for various amounts of time during the period from 2000 to 2007 - Alan M. Boxberger,[8] Connie Percell,[9] Daniel Waguespack,[10] Lois Azzarello,[11] Robin Hote[12] and Stephanie Wade.[13] Plaintiff included a copy of a memorandum to Whitman Kling, Deputy Undersecretary of the Division of Administration, dated December 6, 2000.[14] In the memorandum the plaintiff stated that he had been harassed and retaliated against for participating in the July 2000 Bland complaint and investigation. Plaintiff also submitted a copy of an email he sent to Jerry Luke LeBlanc on December 7, 2004.[15] Plaintiff complained to LeBlanc about his low PPR ratings and denial of his merit raises, and stated that he felt harassed and discriminated against as a result of personnel decisions made under the authority of Stockstill. Plaintiff offered two other documents  - a document entitled "Department of Labor, Federal Funds Report," and a page dated August 1, 2005 with

---

[8] Record document number 23-2.

[9] Record document number 23-3.

[10] Record document number 23-4.

[11] Record document number 23-5.

[12] Record document number 23-6.

[13] Record document number 23-7.

[14] Record document number 23-11.

[15] Record document number 23-8.

eight numbered statements related to the Louisiana Department of Labor.[16]

## Summary Judgment Standard

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court may not make credibility findings, weigh

---

[16] Record document numbers 23-9 and 23-10, respectively.

the evidence, or resolve factual disputes. *Id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000). On summary judgment, evidence may only be considered to the extent not based on hearsay or other information excludable at trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

## Applicable Law

The applicable substantive law dictates which facts are material. *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001). The following substantive law is applicable in this case: (1) the statute of limitations and elements of a retaliation claim under Title VII; (2) the statute of limitations and elements of retaliation claims under state whistleblower law, claims for intentional infliction of emotional distress and negligence.[17]

### Title VII Retaliation Claim

Title VII requires a plaintiff to file an EEOC charge within 300 days of the occurrence of an alleged discriminatory act. 42

---

[17] The only law cited in this section is the law related to claims the plaintiff argued should not be dismissed on summary judgment. It is unnecessary to set forth the law applicable to the claims for which the plaintiff does not oppose summary judgment.

U.S.C. § 2000e-5(e)(1).[18]  An act occurs on the day it happens and
a party must file his charge of discrimination within 300 days of
the date of the act in order to recover for it.  If a claim is not
filed within the statutory time limitation the claim is time-
barred.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,
110, 122 S.Ct. 2601, 2070-71 (2002); *Frank v. Xerox Corp.*, 347 F.3d
130, 136 (5th Cir. 2003); *Abrams v. American Airlines Inc.*, 302
Fed.Appx. 242 (5th Cir. 2008).  Congress intended this period to
act as a statute of limitations.  *Webb v. Cardiothoracic Surgery
Associates of North Texas, P.A.*, 139 F.3d 532, 537 (5th Cir. 1998).
Thus, a plaintiff cannot sustain a claim based upon incidents that
occur more than 300 days before the filing of the charge of
discrimination.  *Id*.

The doctrine of continuing violation is an equitable one which
relieves an aggrieved employee alleging discrimination from the
burden of proving that the entire violation occurred within the
actionable period, provided the plaintiff can show a series of
related acts, one or more of which falls within the limitations
period.  See, Messer *v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997).

The Supreme Court in *National Railroad Passenger Corp. v.
Morgan* addressed both discrete discriminatory acts and hostile
environment claims to consider whether, and under what

---

[18] Louisiana is a deferral state.  Therefore, the 300 day time
period applies here.  *Janmeja v. Board of Supervisors of Louisiana
State*, 96 Fed.Appx. 212, 214 (5th Cir. 2004).

circumstances, a Title VII plaintiff can file a suit based on events that fall outside the 300-day statutory time period. *Morgan*, 536 U.S. at 104, 112 S.Ct. at 2068. Specifically addressing hostile environment claims, the Court stated:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts. (internal citations and quotations omitted).

*Morgan*, 536 U.S. at 116, 122 S.Ct. at 2073.

The Court reasoned that a hostile environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice. Repeated conduct is part of the nature of hostile environment claims. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004), *citing*, *Morgan*, *supra*. Thus, it does not matter that some of the constituent acts which created the hostile work environment fall outside the statutory time period. As long as an act contributing to the claim occurs within the 300-day filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. A charge alleging a hostile environment claim will not be time barred as long as all acts which make up the claim are part of the same unlawful employment practice and at least one act falls within the statutory period. *Id.* The court's

task, therefore, is to determine whether the acts the employee complains about are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period. *Morgan*, 536 U.S. at 119, 122 S.Ct. at 2076.[19]

A plaintiff establishes a prima facie case for unlawful retaliation under 42 U.S.C. § 2000e-3(a) by proving that: (1) he or she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and, (3) a causal connection exists between the protected activity and the adverse employment action. *LeMaire v. State of Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007).

An employee has engaged in protected activity if he or she has: (1) opposed any practice made an unlawful employment practice by the statute; or, (2) made a charge, testified, assisted or participated in any manner in a Title VII investigation, proceeding or hearing. *Grimes v. Texas Dept. of Mental Health*, 102 F.3d 137, 140 (5th Cir.1996). The opposition clause requires the employee to show that he or she had at least a reasonable belief that the practices opposed were unlawful. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). However, proof of an actual unlawful employment practice is not required to state a claim for unlawful retaliation. *Id.*, at 309, n.10, *citing*, *Payne v.*

---

[19] *See*, *Waltman v. International Paper Co.*, 875 F.2d 468, 476 (5th Cir. 1989)(hostile environment claim usually involves a continuing violation).

*McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137-41 (5th Cir. 1981).

Title VII's retaliation provision is not limited to actions and harms that relate to employment or occur at the workplace. It covers employer actions materially adverse to a reasonable employee, that is, actions that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 2415 (2006); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008). *Burlington* overruled Fifth Circuit precedent which limited actionable Title VII retaliatory conduct to ultimate employment decisions. *Burlington*, 126 S.Ct. at 2410.

The causal link required by the third prong of the prima facie case does not have to meet a "but for" standard. A plaintiff does not have to prove that his protected activity was the sole factor motivating the employer's challenged actions to establish the causal link element of a prima facie case. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 562, n. 28 (5th Cir. 2007); *Swanson v. General Services Admin*., 110 F.3d 1180, 1188 (5th Cir. 1997).

If the plaintiff establishes a prima facie case of retaliation, the defendant must come forward with a legitimate, non-retaliatory reason for its adverse employment action. After the defendant advances its reason, the focus becomes whether the employer retaliated against the employee because he or she engaged in protected activity, which is the ultimate issue in a retaliation case. Although not in itself conclusive, the timing of an employer's actions can be a significant factor in the court's analysis of a retaliation claim. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992).

In Title VII retaliation claims the recent Fifth Circuit decision in *Smith v. Xerox Corp.*[20] modified the law applicable to a plaintiff's burden of proving retaliation. The court looked to its Title VII retaliation precedents based on *Price Waterhouse v. Hopkins*,[21] and the Supreme Court decision in *Desert Palace, Inc. v. Costa*.[22] The court concluded that a mixed-motive theory may still be used in Title VII retaliation cases, and a plaintiff is not required to have direct evidence of retaliation to proceed under this theory.

Prior to *Smith*, the Fifth Circuit had stated that for a plaintiff to prevail on a Title VII retaliation claim, the

---

[20] 602 F.3d 320, 329-30 (5th Cir. 2010).

[21] 490 U.S. 228, 109 S.Ct. 1775 (1989).

[22] 539 U.S. 90, 123 S.Ct. 2148 (2003).

plaintiff had to prove that the adverse employment action would not have occurred but for the protected activity. *Strong v. University Health Care System, L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007) (decision in *Septimus* leaves no doubt that the but for standard controls); *Septimus* v. *University of Houston*, 399 F.3d 601, 608-09 (5th Cir. 2005). It is now apparent from the Fifth Circuit's analysis in *Smith* that a plaintiff may also satisfy the burden of proving retaliation under Title VII by demonstrating that unlawful retaliation was a motivating factor in the employer's adverse employment decision. Consequently, to withstand summary judgment the plaintiff, using direct or circumstantial evidence, must present sufficient evidence for a reasonable jury to conclude that retaliation was a motivating factor for the defendant's employment action. *See*, *Roberson v. Alltel Information Services*, 373 F.3d 647, 652 (5th Cir. 2004), *citing*, *Desert Palace*, 539 U.S. at 101, 123 S.Ct. at 2155.

**State Law Claims: LSA-R.S. 23:967, intentional infliction of emotional distress, and negligence**

The one year prescriptive period for delictual actions in Louisiana governs a whistleblower claim under LSA-R.S. 23:967 and state law tort claims for intentional infliction of emotional distress and negligence. *Langley v. Pinkerton's* Inc., 220 F.Supp.2d 575, 581 (M.D. La. 2002); Nolan *v. Jefferson Parish Hosp. Service Dist. No.*, 790 So.2d 725, 733 (La.App. 5 Cir. 2001); *Alcorn*

15

*v. City of Baton Rouge*, 898 So.2d 385, 388 (La.App. 1 Cir. 2004); *King v. Phelps Dunbar, L.L.P.*, 743 So.2d 181, 187 (La. 1999); Louisiana Civil Code article 3492.[23]

The Louisiana Supreme Court has held that the continuing tort doctrine applies to claims for intentional infliction of emotional distress brought in the context of allegations of a hostile/abusive work environment. *See*, *Bustamento v. Tucker*, 607 So.2d 532, 538-39 (La. 1992); *King*, 743 So.2d at 188.

The Louisiana whistleblower statute, LSA-R.S. 23:967 provides in pertinent part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

The statute also states: "Reprisal includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected" under the statute. LSA-R.S. 23:967(C)(1). While the Louisiana Supreme Court has not interpreted this statute, it is the consensus

---

[23] "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."

thus far of the lower Louisiana courts that the employer must have committed an actual violation of state law. *Beard v. Seacoast Elec., Inc.*, 2006-1244 (La.App. 4 Cir. 2/4/07), 951 So.2d 1168; *Accardo v. Louisiana Services & Indem. Co.*, 2005-2377 (La.App. 1 Cir. 6/21/06), 943 So.2d 381, 387; *Hale v. Touro Infirmary*, 2004-0003 (La.App. 4 Cir. 11/3/04), 886 So.2d 1210, *writ denied*, 2005-0103 (La. 3/24/05), 896 So.2d 1036; *Puig v. Greater New Orleans Expressway Comm'n*, 2000-924 (La.App. 5 Cir. 10/31/00), 772 So.2d 842, *writ denied*, 2000-3531 (La. 3/9/01), 786 So.2d 731; *Diaz v. Superior Energy Services LLC*, 341 Fed.Appx. 26 (5th Cir. 2009). Therefore, under LSA-R.S. 23:967 the plaintiff must prove an actual violation of state law, not just a good faith belief that a law was broken.[24]

Other than this difference, the standards governing claims under Louisiana's whistleblower statute and Title VII retaliation claims are materially indistinguishable. *Strong*, *supra*.

Plaintiff also asserted a claim for intentional infliction of emotional distress under Louisiana Civil Code Article 2315. In order to recover for intentional infliction of emotional distress, a plaintiff has the burden of proving that: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by her was severe; and, (3) the defendant desired to

---

[24] Proof of an actual unlawful employment practice is not required for a Title VII retaliation claim. *Long*, *supra*.

17

inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from the conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La. 1991); *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 514 (5th Cir. 1994). The conduct complained of must be so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as utterly intolerable in a civilized community. *Id.* Liability arises only where the mental suffering or anguish is extreme, and the distress suffered must be such that no reasonable person could be expected to endure it. *White*, 585 So.2d at 1210.

Under Louisiana Civil Code Article 2315 the elements of a general negligence action are fault, causation and damages. *Coleman v. La Terre Physical Therapy, Inc.*, 2009-1666 (La.App. 1 Cir. 3/26/10), 36 So.3d 325, 328. An employee's exclusive remedy against his employer for injuries suffered in the course and scope of his employment is limited to recovery under the Louisiana Workers' Compensation Act. LSA-R.S. 23:1032; *Ardoin v. Cleco Power, L.L.C.*, 2010-815 (La. 7/2/10), 38 So.3d 264. The Act also provides public employees their exclusive remedies for work-related negligence claims. LSA-R.S. 23:1034(A); *Talley v. State*, 31,367 (La.App. 2 Cir. 12/9/98), 722 So.2d 390, 392.

## Analysis

### 1. There is no genuine dispute for trial as to the plaintiff's Title VII retaliation claim.

It is undisputed that the plaintiff filed his EEOC charge on August 30, 2006. Plaintiff specifically alleged that he began to experience retaliation in 2000 after he testified and supported Bland's discrimination complaint. Under established Title VII law the plaintiff cannot sustain a claim based upon any incidents of retaliation that he alleges - low performance ratings, denial of merit increases, promotions, and bonuses, or threats of demotion - that occurred more than 300 days before the filing of the charge of discrimination. Thus, on the date the plaintiff filed his EEOC charge, any alleged retaliatory acts that occurred prior to November 4, 2005 were time-barred under § 2000e-5(e)(1).

Plaintiff appeared to argue that any actions that occurred more than 300 days before he filed his charge are actionable because the defendants engaged in a course of retaliatory harassment based on conduct that occurred from 2000 through 2006. This argument is legally and factually unsupported. Following *Burlington Northern,* the Fifth Circuit has yet to recognize a retaliatory hostile work environment claim. *Bryan v. Chertoff*, 217 Fed.Appx. 289 (5th Cir. 2007); *Fallon v.* Potter, 277 Fed.Appx. 422 (5th Cir. 2008); *Thomas v. City of Shreveport*, 2008 WL 4291211 (W.D. La. Sept. 15, 2008). Furthermore, even if there were a legal basis for a retaliation-based hostile environment claim, the

defendants would still be entitled to summary judgment.  Under the continuing violation doctrine the plaintiff must establish that all acts which make up the claim are part of the same unlawful employment practice and that at least one act falls within the statutory time period.  Although the plaintiff received negative, "needs improvement" job ratings from Bland in February and August 2006,[25] the plaintiff did not point to, and the record does not reveal, any competent summary judgment evidence showing that these acts were part of the alleged retaliation the plaintiff claimed occurred prior to November 2005.  This same lack of evidence demonstrates the absence of a causal connection between the plaintiff's protected activity in 2000 and any adverse employment action that occurred from November 2005 to August 2006.  Nor is there any evidence to dispute the defendants' legitimate, non-retaliatory reasons for their employment actions.

The record establishes that the plaintiff had four different direct supervisors from 2000 to 2007.  Plaintiff's supervisors from 2000 to 2007 were: (1) Ernest F. LeBlanc, from 2000 to 2001; (2) Mike Barbier, from 2002 to 2003; (3) Robert Rachal, in 2004; and, (4) Bland, from 2004 until her retirement in 2007.  Bland became the plaintiff's direct supervisor in November 2004 and remained in

---

[25] Record document number 20-25.

that position until she retired in 2007.[26] Thus, during the 300 day period prior to the plaintiff filing his EEOC charge, Bland supervised the plaintiff on a day-to-day basis and did his performance reviews and recommendations for merit pay increases.[27] Plaintiff's protected activity was his support of Bland's July 2000 complaint of gender discrimination and unprofessional conduct in OPB. Understandably, the plaintiff does not contend that Bland retaliated against him for engaging in this protected conduct in support of her discrimination complaint.[28]

Stockstill was the plaintiff's next level supervisor throughout the events that gave rise to the plaintiff's EEOC charge and this action. However, by November 2005 more than five years had passed since the plaintiff participated in Bland's discrimination complaints. Although Stockstill signed off on the performance reviews, there is no evidence that Stockstill was involved in or influenced Bland's rating of the plaintiff's work

---

[26] In the fall of 2007 Ternisa Hutchinson became the plaintiff's direct supervisor. In 2007 neither Bland nor Hutchinson gave the plaintiff a low PPR or denied him a merit pay increase. In October 2008 the plaintiff was promoted to Budget Manager Analyst 4. Record document number 20-33, Statement of Undisputed Material Facts, numbers 42-49; record document number 20-14, Cardona affidavit.

[27] Record document number 20-30, exhibit C, Bland affidavit, ¶ 10.

[28] Record document number 20-1, plaintiff depo., pp. 19, 29-32, record document number 20-2, pp. 36, 56-58, record document number 20-3, pp. 70-74, 91, record document number 20-4, pp. 97, 101, record document number 20-6, p. 169.

performance.  With regard to promotions, the plaintiff did not identify any specific positions that he applied for and was denied by Bland and/or Stockstill during the time period from November 2005 to August 2006.  Moreover, the plaintiff did not offer any evidence that he was clearly better qualified than any of the individuals selected for promotions in OPB during this time period.[29]  The affidavits submitted by the plaintiff did not contain any competent summary judgment evidence that specifically contradicts the plaintiff's performance ratings, or supports a reasonable inference that he was clearly better qualified for some promotion that he was denied, during this time period.[30]  The general opinions held by the plaintiff's co-workers/other budget analysts regarding the plaintiff's abilities and job performance are insufficient to rebut the defendants' evidence showing that

---

[29] Record document number 20-2, plaintiff depo., pp. 46, 49-55, record document number 20-4, pp. 102-04.  In his affidavit Stockstill identified four promotions that the plaintiff was denied from 2005 to 2007.  Record document number 20-31, exhibit D, Stockstill affidavit, § 19-22.  One of these occurred during the period November 4, 2005 to August 30, 2006.  Plaintiff did not offer any competent summary judgment evidence to refute the defendants' legitimate, non-retaliatory explanation for selecting another applicant rather than him, or present any evidence from which a jury could reasonably infer that he was clearly more qualified then the person who was given the promotion.

[30] None of the persons who provided affidavits worked with the plaintiff continuously from 2000 to 2007.  Many of the statements contained in the affidavits were not based on personal knowledge, and the affidavits contained a substantial amount of speculation, hearsay, and personal opinion.  These portions of the affidavits are not competent summary judgment evidence.

their employment decisions were motivated by legitimate, non-retaliatory reasons.[31]

Therefore, the plaintiff has failed to provide sufficient evidence from which a reasonable jury could logically infer a causal connection between the plaintiff's protected activity and any adverse employment actions that occurred from November 2005 to August 2006, or that retaliation was a motivating factor in the defendants' employment decisions during this period. For these reasons, and because any alleged retaliatory acts that occurred

---

[31]     [A] plaintiff may survive summary judgment and take his case to the jury by providing evidence that he was "clearly better qualified" than the employee selected for the position at issue.... [E]vidence of the plaintiff's superior qualification is ... probative of pretext. However, the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." (citations omitted).

*Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356-57 (5th Cir. 2001); *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).

Plaintiff offered no specific facts to support his assertion that he was clearly better qualified for the promotions he claims he should have gotten. In the absence of any evidence that connects the plaintiff's experience and qualifications to the duties of each position, or compares the plaintiff's experience and qualifications to the individuals who were chosen for the job, the plaintiff's own belief or the general opinions of his co-workers that he was more qualified is insufficient to create a substantial jury question.

prior to November 4, 2005 are time-barred, summary judgment should be granted in favor of the defendants on the plaintiff's Title VII retaliation claim.

> **2.  There is no genuine dispute for trial as to the plaintiff's state law claims based on LSA-R.S. 23:967, intentional infliction of emotional distress and negligence.**

A one year prescriptive period is applicable to state law whistleblower claims and claims of negligence and intentional infliction of emotional distress. Plaintiff filed this action on April 29, 2008. Therefore, to the extent the plaintiff alleged these claims under state law based on events that occurred more than one year before he filed suit, the claims are prescribed. For the reasons already explained in the analysis of the Title VII retaliation claim, there is also no evidence to support a reasonable inference of a continuing violation that would allow a finding of liability based on defendants' conduct prior to April 29, 2007.

To the extent the plaintiff alleged retaliation, intentional infliction of emotional distress and negligence during the one year period before suit was filed, the plaintiff did not come forward with any evidence to support these claims.

When questioned about the basis for his whistleblower claim under state law the plaintiff only testified about actions that

occurred well before April 2007.[32]  Furthermore, for the period from April 2007 to April 2008, the plaintiff did not point to, nor does the summary judgment record reveal, any evidence that the plaintiff reported or threatened to report an actual violation of state law or any evidence of adverse employment actions or other retaliation taken against the plaintiff.  In fact, the evidence submitted by the defendants showed that from February 2007 through September 2008 the plaintiff received ratings of "meets" or "exceeds" requirements and was recommended for merit pay increases.[33]  There is also no evidence that the plaintiff applied for and was denied any promotions during this time period.[34]  Defendants are entitled to summary judgment as a matter of law on plaintiff's claim under state whistleblower law.

Plaintiff also alleged a state law claim for intentional infliction of emotional distress.  Defendants asserted that the plaintiff did not appear to allege any intentional infliction of emotional distress claim for the period from April 29, 2007 forward.  In the alternative the defendants argued that the plaintiff cannot meet the legal standard for establishing such a claim.  In his opposition the plaintiff merely asserted that all of

---

[32] Record document number 20-3, plaintiff depo., pp. 65-71.

[33] Record document numbers 20-26, 20-27 and 20-37.

[34]  Record document number 20-32, exhibit D, Stockstill affidavit, § 14, 20-22; record document number 20-2, plaintiff depo., pp. 49-56, record document number 20-4, pp. 102-04.

the actions of the defendants taken together were outrageous and reflected a calculated plan to cause him emotional harm.

Louisiana law sets a high threshold for establishing a claim for intentional infliction of emotional distress in a workplace environment.[35]  Liability is usually limited to cases involving a pattern of deliberate, repeated harassment over a period of time, and the resulting mental anguish or suffering must be extreme or unendurable.[36]  The evidence is not such that a reasonable jury could find any of the defendants' actions were extreme and outrageous, or that the emotional distress suffered by the plaintiff was severe.[37]  Plaintiff essentially rested on conclusory assertions and failed to cite any summary judgment evidence to support the elements of this claim.  Defendants' motion for summary judgment as to the state law claim for intentional infliction of

---

[35] *See*, *Smith v. Amedisys*, 298 F.3d 434, 449 (5th Cir. 2002), *citing*, *White*, 585 So.2d at 1209-10.

[36] *Bustamento,* 607 So.2d at 538 (outrageous conduct must cause serious emotional harm to the plaintiff); *White*, 585 So.2d at 1210 (distress suffered must be such that no reasonable person could be expected to endure it; liability arises only where the mental suffering or anguish is extreme).

[37] Record document number 20-4, plaintiff depo., pp. 105-07, 115-17.  Plaintiff testified that eight months prior to his deposition he began taking medication for high blood pressure, but he did not state or provide any evidence that the defendants' conduct was the cause.  Nor did the plaintiff come forward with any evidence that the defendants' actions caused him to have a speech impediment.  Thus, the plaintiff's assertion in his memorandum that he had these conditions because of emotional distress caused by the defendants' actions is unsupported.

emotional distress should be granted.

Finally, there is also no legal or factual basis to support the plaintiff's claim of negligent supervision and training. Plaintiff alleged that the defendants failed to exercise reasonable care in the training of management employees.[38] As previously explained, any tort claims based on events that occurred more than one year before this suit was filed are prescribed. Moreover, as correctly argued by the defendants, the plaintiff's alleged negligence claims arising out of his employment with the State of Louisiana Division of Administration are barred by the state's workers' compensation law, which provides the exclusive remedy for work-related negligence claims.[39] Even if the negligence claims could be brought, the plaintiff presented no facts to support his assertion that managers are promoted and then are not given any training on how to be managers.[40]

Based on the above analysis, the defendants are entitled to summary judgment as to the plaintiff's state law claims based on LSA-R.S. 23:967, intentional infliction of emotional distress and negligence.

---

[38] Record document number 7, 1st Amendment to Plaintiff Original Complaint, ¶¶ 18-19. Plaintiff testified that there is no substantive difference between his original and amended complaint. The only difference is in the naming of the defendant in the caption. Record document number 20-4, plaintiff depo., pp. 118-19.

[39] LSA-R.S. 23:1034(A); *Talley*, *supra.*

[40] Record document number 20-4, plaintiff depo. pp. 107-08.

### 3. There is no genuine dispute for trial as to any of the plaintiff's remaining claims.

Defendants moved for summary judgment as to all federal and state law claims alleged by the plaintiff. Plaintiff opposed summary judgment as to his claim for retaliation under Title VII and his state tort law and whistleblower claims. He did not attempt to oppose summary judgment as to any other claims. For this reason, and because these claims have no factual or legal basis, the defendants are entitled to summary judgment on all remaining claims alleged by the plaintiff.

1.  Plaintiff's Title VII claims against defendant Stockstill should be dismissed. Stockstill is not the plaintiff's employer under Title VII's definition of "employer."[41]

2.  Plaintiff's claims under Title VII and 42 U.S.C. § 1981 for discrimination based on race/racial harassment, and under Title VII for discrimination based on sex, color, and national origin should be dismissed. Plaintiff did not assert these claims in his EEOC charge and they are not within the scope of his charge.[42] Plaintiff testified in his deposition that the only basis for his

---

[41] *Grant v. Lone Star Co.,* 21 F.3d 649, 651-53 (5th Cir. 1994)(individual not liable under Title VII unless he meets Title VII definition of employer).

[42] Record document number 20-7, exhibit A-1; *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990); *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

claims was retaliation, and he denied that he was asserting discrimination based on sex, race, color or national origin.[43]

3.   Plaintiff's retaliation claim under 42 U.S.C. § 1981 should be dismissed.  Section 1981 only protects against retaliation for opposition to race discrimination in the workplace.[44]  Plaintiff did not claim that he was retaliated against for opposing race discrimination in the workplace.[45]

4.   To the extent the plaintiff alleged a First Amendment retaliation claim, this claim should be dismissed. Plaintiff failed to provide any legal or factual basis to support it.[46]

5.   Plaintiff's alleged claim of retaliation based on the

---

[43] Record document number 20-2, plaintiff depo., pp. 60-63, record document number 20-3, pp. 70-74, record document number 20-4, pp. 97, 101, record document number 20-6, p. 169.

[44] *Foley v. Univ. of Houston System*, 355 F.3d 333, 339 (5th Cir. 2003); *Swanson v. City of Bruce, Miss.*, 105 Fed.Appx. 540, 543 (5th Cir. 2004).

[45] Bland's complaint/appeal which the plaintiff participated in did not involve race discrimination.  Bland's complaint involved alleged gender discrimination in OPB.

[46] *See, Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006); *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008); record document numbers 20-2 - 20-3, plaintiff depo. pp. 64-65.

"Federal Whistleblower Act" should be dismissed.[47] Plaintiff did not assert any legal or factual basis for a whistleblower claim under any federal statute.

6.  Plaintiff's claims under the LEDL for discrimination based on sex, race, racial harassment, color, national origin, and retaliation should be dismissed. Plaintiff testified that he was not asserting a claim for discrimination based on sex, race, racial harassment, color or national origin, and the plaintiff's alleged retaliation claim under the LEDL has no legal basis. Under the LEDL only the sections prohibiting discrimination based on age and sickle cell trait contain an anti-retaliation provision. Anti-retaliation provisions are absent from the section that prohibits discrimination based on race, color, religion, sex and national origin. Plaintiff has no retaliation claim as a matter of law under the state statute.[48]

## Recommendation

It is the recommendation of the magistrate judge that the Motion for Summary Judgment filed by defendants the State of

---

[47] Record document number 7, 1st Amendment to Plaintiff Original Complaint, § 8, p. 5.

[48] *Smith v. Parish of Washington*, 318 F.Supp.2d 366, 373 (E.D. La. 2004); *Barringer v. Robertson*, 2007-0802 (La.App. 1 Cir. Oct. 31, 2008), 2008 WL 4763539.

Louisiana, through Division of Administration, Office of Planning and Budget and Ray Stockstill be granted.

Baton Rouge, Louisiana, February 2, 2011.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE